IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES MCDOWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No.: 2:16-cv-3-MHT-WC |
| | ) | |
| MASSEY AUTO, | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER AND
# RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.     INTRODUCTION

On January 4, 2016, James McDowell ("Plaintiff") filed a complaint (Doc. 1)

alleging that Massey Auto ("Defendant") unlawfully discriminated against him because

of his age in violation of the Age Discrimination in Employment Act ("ADEA") of 1967,

28 U.S.C. § 621634(b), *et al*., and the Alabama Age Discrimination Act ("AADEA"),

Ala. Code § 25-1-29, *et seq*. (1975).   *See generally* Doc. 1.   On January 20, 2017, the

parties filed cross-motions for summary judgment.   *See* Def.'s Mot. (Doc. 23) and Brief

in Support (Doc. 24); Pl.'s Mot. (Doc. 26).   The undersigned entered an Order directing

the parties to show cause, on or before February 14, 2017, why the opposing party's

motion for summary judgment should not be granted.   Order (Doc. 27).   Defendant filed

a timely response, which contained a motion to strike an affidavit relied upon by Plaintiff

in his motion for summary judgment.[1]   Doc. 28.   Plaintiff filed an untimely response to Defendant's motion for summary judgment on February 19, 2017, without permission from the court.   Doc. 29.   Defendant subsequently moved to strike Plaintiff's response as untimely.   Doc. 30.   Plaintiff filed an unsolicited opposition to Defendant's motion to strike (Doc. 31) his response, and the undersigned entered an Order (Doc. 33) directing Defendant to reply to Plaintiff's opposition.   Defendant filed a reply.   Doc. 35.   On February 28, 2017, in accordance with the timeframe set forth in the undersigned's show cause orders for the summary judgment motions, Defendant filed a reply to Plaintiff's response in opposition to Defendant's motion for summary judgment.   Doc. 35. Plaintiff did not file a reply to Defendant's response in opposition to Plaintiff's motion for summary judgment.[2]   As the matters before the court are fully briefed, they are ripe for determination and recommendation, as appropriate.[3]

The undersigned turns first to the pending motions to strike, as such determinations may be pertinent to the undersigned's recommendation on the parties' cross-motions for summary judgment.

---

[1] The motion to strike the affidavit was embedded in Defendant's response and not sign-posted in the document's title.   However, in Defendant's request for relief, Defendant specifically asks the court deny Plaintiff's motion for summary judgment and "strike the Affidavit of Joseph Redmond."   Doc. 28 at 14. Thus, the undersigned interprets Defendant's response to contain a motion to strike.

[2] Because Plaintiff did not file a reply to Defendant's response, which contained the motion to strike the Redmond affidavit, Plaintiff has presented no opposition to Defendant's motion.   The undersigned did not issue a separate show cause order on the matter, and does not find that one is or was necessary, considering that Plaintiff had an opportunity to respond to the motion, but did not.

[3] The United States District Judge referred this case to the undersigned United States Magistrate Judge on April 26, 2016, "for consideration and disposition or recommendation on all pretrial matters as may be appropriate."   Order (Doc. 16).

## II.     DEFENDANT'S MOTIONS TO STRIKE

Defendant has two motions to strike.   In the first motion, Defendant moves the court to strike Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Doc. 29) as untimely.   Doc. 30.   In the second motion, as construed, Defendant moves the court to "strike the Affidavit of Joseph Redmond[,]" whose affidavit Plaintiff relied upon to support his motion for summary judgment.   Doc. 28 at 8-12, 14.

### A.     Defendant's Motion to Strike Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment

In the motion to strike Plaintiff's opposition to Defendant's motion for summary judgment, Defendant argues that Plaintiff's response should be stricken because it was filed, without leave of the court, five days after the court's response deadline expired. Doc. 30 at 2.

Plaintiff opposes Defendant's motion, arguing that his untimely filing should be excused because Plaintiff's counsel's adult son, who has disabilities, underwent several surgeries between February 1, 2017, and February 10, 2017.   Doc. 31 at 1.   Plaintiff's opposition also notes that Plaintiff's counsel, in addition to caring for her adult son, has also been ill, and presumably, unable to respond.   *Id*.

Upon direction of the undersigned, Defendant filed a reply to Plaintiff's opposition to strike the filing.   Doc. 35.   In that reply, Defendant sympathized with the personal issues faced by Plaintiff's attorney, but held firm that the late submission should

be stricken.  *Id.*  Specifically, Defendant noted that Plaintiff's counsel never requested leave of the court to file the response late, nor did she contact Defendant to advise it that the response would be filed outside of the deadline.  *Id.* at 2.  Defendant argues that such disregard for the court's deadlines, without request for accommodation, warrants the response stricken.  *Id.*

While a district court enjoys broad discretion to manage its case load and enforce deadlines, *Young v. City of Palm Bay, Fla.,* 358 F.3d 859, 864 (11th Cir. 2004), its discretion is "not unfettered[,]" *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1366-67 (11th Cir. 1997).  Rule 6(b) of the Federal Rules of Civil Procedure provides guidance as to when late filings should be excused.  The Rule states that the court may extend the filing time "on motion made after the time has expired if the party failed to act because of excusable neglect."[4]  Fed. R. Civ. P. 6(b)(1)(B).  Whether a plaintiff has established excusable neglect is guided by four factors: (1) the danger of prejudice to the opposing party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith.  *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

As to the first factor, Defendant has not set forth, in either its motion to strike the untimely filing or in its reply to Plaintiff's opposition, how Defendant would be

---

[4] Notably, Plaintiff has not filed a motion before this court to allow the late filing.  However, Plaintiff has opposed Defendant's motion to strike the response, indicating his intent to have the response considered by the court.

prejudiced if the court did not strike Plaintiff's untimely response. *See* Docs. 30, 35. An absence of this argument weighs heavily against granting the motion to strike, particularly considering a court's decision to strike untimely responses is reviewed under an abuse of discretion standard, and abuse occurs "if the district court imposes some harm, disadvantage, or restriction upon someone that is unnecessarily broad or *does not result in any offsetting gain* to anyone else or society at large." *Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1096 (11th Cir. 2004) (emphasis added). Thus, if the motion were to be granted, it would not offset any gain to Plaintiff, as Defendant has not alleged how Plaintiff has benefitted or how Defendant has been harmed by the untimeliness of Plaintiff's filing.

Additionally, analysis of the other excusable neglect factors indicate that the motion should not be granted. The length of Plaintiff's delay—five days—and its impact on the proceedings in this case are minimal. Such a small delay that has had virtually no impact upon the case's progression weighs against granting the motion to strike. *See, e.g., F.T.C. v. Peoples Credit First, LLC*, No. 8:03CV2353-T-17TBM, 2005 WL 1785219, at *1 (M.D. Fla. July 26, 2005) (refusing to strike a response to summary judgment that was eight days late). Further, while it is likely that Plaintiff could have signaled to the court and/or Defendant that he needed additional time to respond, the reason for Plaintiff's delay was not entirely under his or his counsel's control, as it involved significant personal demands on Plaintiff's counsel's time and attention.

Finally, the undersigned does not find that Plaintiff acted in bad faith when submitting his untimely response. Thus, the undersigned concludes that the four-factor test for determining excusable neglect indicates that Plaintiff's filing should not be stricken under Rule 6. Undoubtedly, deadlines are not aspirational and should, under most circumstances, be strictly adhered to. However, the undersigned declines to impose the severe sanction of striking Plaintiff's response here, particularly considering that the delay is minimal and Defendant has failed to proffer any potential prejudice it would suffer if the response is not stricken. Accordingly, Defendant's Motion to Strike (Doc. 30) is due to be denied.

## B. Defendant's Motion to Strike the Affidavit of Joseph Redmond

Embedded in Defendant's response to Plaintiff's motion for summary judgment is a motion to "strike the Affidavit of Joseph Redmond"[5] as a sham affidavit, which was relied upon by Plaintiff in his motion for summary judgment. Doc. 28 at 8-12. Defendant argues that Redmond's affidavit "clearly contradicts his deposition testimony that he has given in this case," and that it does not "contain all of the facts surrounding the reasons for Plaintiff's termination[,]" to which Redmond later testified. *Id*. at 8-9. While Defendant notes that the sham affidavit rule explicitly applies to disregard affidavits that clearly contradict *prior* deposition testimony in order to create an issue of material fact, *see Santhuff v. Seitz*, 385 F. App'x 939, 944 (11th Cir. 2010), Defendant

---

[5] As explained further in the undersigned's recommendation as to summary judgment, Redmond was employed by Defendant and was the individual who communicated to Plaintiff that he had been terminated.

also cites to a situation in which the rule has been applied, like in this case, to disregard affidavits that contradict *subsequent* deposition testimony. Doc. 28 at 9 (citing *Green v. Mobis Ala., LLC*, 995 F. Supp. 2d 1285, 1296 (M.D. Ala. 2014) (striking an affidavit, which was later contradicted by deposition testimony, as a sham)).

The Eleventh Circuit "allows a court to disregard an affidavit as a matter of law when, without explanation, it flatly contradicts . . . prior deposition testimony for the transparent purpose of creating a genuine issue of fact where none existed previously." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1306 (11th Cir. 2016). "However, the rule only operates in a limited manner to exclude unexplained discrepancies and inconsistencies, as opposed to those 'which create an issue of credibility or go to the weight of the evidence.'" *Id.* (citing *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986)). "[Where] the apparent contradiction derives not from purposeful fabrication but instead from dialectical misunderstanding . . . any apparent contradiction becomes 'an issue of credibility or go[es] to the weight of the evidence[.]'" *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1162 (11th Cir. 2012). In other words, "[a]n opposing party's affidavit should be considered although it differs from or varies [from] his evidence as given by deposition or another affidavit[,]" and the two "in conjunction may disclose an issue of credibility" at trial. *Tippens*, 805 F.2d at 953. Because of the harsh effect it may have on a party's case, the sham affidavit rule should be applied only in limited circumstances. *Furcron*, 843 at 1307 (citing *Allen v. Bd. of Pub. Educ. for Bibb Cty.*,

495 F.3d 1306, 1316 (11th Cir. 2007)).

Here, Redmond provided an affidavit for Plaintiff on July 27, 2016. Doc. 26 at 9. A little over four months after providing the affidavit, Redmond was deposed on December 2, 2016. Doc. 25-2. In support of its argument to strike the affidavit as a sham, Defendant points to two discrepancies between Redmond's affidavit and his deposition.

First, Redmond's affidavit states:

Without cause, I was instructed to terminate [Plaintiff] in May of 2012 by James Massey. When I asked what was the reason for terminating him, I was told that the work could be done by a much younger woman for a lot less money and who was much better to look at.

Doc. 26 at 9. In his deposition, Redmond states:

. . . James Massey called me on the phone on a Wednesday . . . . And he called me on the phone from, his office over in another building over to my office in the big building and told me that he — that he wanted me to dismiss [Plaintiff], that he — that they had gotten into it with — with somebody from the bank about something . . . . and he told me, you know, he felt like he was too old and we were paying him too much money anyway . . . .

Doc. 25-2, 24:15-25:5.

Second, Redmond's affidavit states: "I often heard other members of the management team make jokes about [Plaintiff] being an old man because his joints made noise when he moved." Doc. 29 at 9. During Redmond's deposition, he was asked if he ever heard Defendant's managers talk about Plaintiff in any way that was disrespectful. Redmond replied:

No. I . . . if they thought that, they wouldn't say it probably in front of me because they knew we were — we were friends. And . . . the salespeople loved him because he made them — he made them a lot of money.

Doc. 25-2 at 33:4-11. When asked again, Redmond confirmed that he had never heard Defendant's managers criticize or make jokes about Plaintiff at any time. *See* Doc. 25-2 at 34:22-35:14.

As to the first inconsistency (Massey's statement to Redmond regarding the reasons for Plaintiff's termination), it appears Redmond offered "more to the story" in his deposition than he originally provided in his affidavit. Clearly, Redmond's affidavit fails to cite the argument that occurred between Plaintiff and a bank representative as the basis for Plaintiff's termination; however, his deposition provides that Massey based Plaintiff's termination upon that confrontation. Although the absence of this alleged basis for Plaintiff's termination within Plaintiff's affidavit is curious to the undersigned, Redmond's affidavit and deposition statements are not wholly inconsistent, or in flat contradiction to each other. Therefore, the undersigned concludes that the affidavit should not be stricken as a sham based on this inconsistency.

As to the second inconsistency (age-related jokes made about Plaintiff by Defendant's management team), Redmond's conflicting statements are more troublesome. Redmond stated in his affidavit that he "often heard other members of the management team make jokes" about Plaintiff's creaking joints, but his deposition indicates that he never heard any manager make jokes or criticize Plaintiff in any way, or

speak about him in a disrespectful manner. While it is difficult to conceive that the discrepancies in the testimony are a result of any "dialectical misunderstanding," the undersigned declines to apply the sham affidavit rule, particularly considering that Redmond was not specifically asked during the deposition about whether the management team made *age-related* jokes. *See* Doc. 25-2 at 32:23-33:11, 34:22-35:14 (noting that Redmond was asked during his deposition whether any managers talked about Plaintiff "in any way that [Redmond] thought was disrespectful" and if any managers made "jokes about [Plaintiff] or criticize[d] him in any way"). "To allow every failure of memory or variation in a witness's testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the witness . . . was stating the truth." *Tippens*, 805 F.2d at 953-54. Indeed, "[v]ariations in a witness's testimony and any failure of memory throughout the course of discovery create an issue of credibility as to which part of the testimony should be given the greatest weight, if credited at all." *Id*. at 954. Considering the sparing application of the rule, the undersigned concludes that Redmond's affidavit should not be disregarded as a sham on this inconsistency.[6]

---

[6] Further, the undersigned notes that this particular inconsistency does not create a genuine issue of material fact. Whether members of Defendant's management team made jokes concerning Plaintiff's age is not of importance because Defendant's management team did not terminate Plaintiff. Thus, even if the team did, on occasion, reference Plaintiff's creaky knees, it would be irrelevant as to whether Massey, who was the decisionmaker in this case, discharged Plaintiff due to his age. *See Tippens*, 805 F.2d at 954 ("An affidavit may only be disregarded as a sham 'when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of *material fact* . . . [and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without

Because the undersigned concludes that neither inconsistency raised by Defendant warrants application of the sham affidavit rule, Defendant's motion to strike the Redmond affidavit is due to be denied.

## III.   MOTIONS FOR SUMMARY JUDGMENT

The parties filed cross motions for summary judgment. Before addressing the motions, the undersigned will provide the applicable standard of review.

### A.    Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes about material facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248).

Under Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

---

explanation, previously given clear testimony.'" (internal citations omitted) (emphasis added)). Therefore, this consideration further supports the undersigned's conclusion that the sham affidavit rule should not be applied here.

entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the non-moving party must "go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that

an adverse party cannot produce admissible evidence to support the fact."   Fed. R. Civ.

P. 56(c)(1)(A) & (B).

If the nonmovant "fails to properly address another party's assertion of fact" as required by Rule 56(c), then the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."   Fed. R. Civ. P. 56(e)(2) & (3).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant.   *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).   Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor.   *Anderson*, 477 U.S. at 255.   However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."   *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).   Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."   *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249-50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

A reviewing court is restrained during summary judgment proceedings from

making the sort of determinations ordinarily reserved for the finder of fact at a trial. *See Strickland*, 692 F.3d at 1154 (citations and quotations omitted) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

### B. Statement of Facts

In December 2011, Plaintiff was hired by Defendant, a car dealership in Andalusia, Alabama, as the Manager of Defendant's Finance and Insurance ("F&I") Department. Plaintiff was hired by Mr. Joey Langley, a partial owner of Defendant, upon the recommendation of Plaintiff's friend, Mr. Joseph Redmond ("Redmond"), who served as Defendant's General Manager. At the time he was hired, Plaintiff was sixty-three years old, and had been in the business of selling cars since 1981. During his employment with Defendant, Plaintiff increased the sales volume of Defendant's dealership from $18,500.00 per month to $60,000.00 per month, and his compensation was based upon the volume he produced.

On approximately May 10, 2012, Plaintiff was summoned to the office of Mr. James Massey ("Massey"), also a partial owner of Defendant, to meet with Massey and

Mr. Randall Chance ("Chance"), a senior account executive with Ally Finance.   At that time, Ally Finance provided Defendant with inventory financing, as well as retail and lease financing.   Chance states that, during the meeting, Plaintiff seemed "agitated."   A confrontation ensued culminating with Plaintiff calling Chance a "fucking liar." Plaintiff denies being agitated during the meeting and states that he never called Chance a "fucking liar."

After the meeting, Plaintiff returned to his office and worked until closing time. The next day, Plaintiff was terminated, via telephone, by Redmond.   Redmond testified that Massey directed him to terminate Plaintiff because he and Plaintiff "had gotten into it" with somebody from the bank "about something."   Massey also stated, according to Redmond, that he felt like Plaintiff was too old and made too much money, anyway, and that he could be replaced by a younger woman who was much better to look at.   Plaintiff trained the younger woman, age thirty-eight, who replaced him.   She was terminated approximately six months after she was placed in Plaintiff's job.

Sometime after his termination, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC").   On October 1, 2015, the EEOC determined that

> there is reasonable cause to believe that a violation of the statute has occurred with respect to [Plaintiff's] age (67), in violation of the Age Discrimination in Employment Act.   Evidence indicates that [Plaintiff's] supervisor was instructed to terminate him because of his age (67).

Doc. 1-1 at 1.

## C.     The Substance of the Parties' Motions

Plaintiff's Motion for Summary Judgment moves the court to grant summary judgment in his favor because he asserts that he "can establish a prima facie case of discrimination"; that Defendant "fails to articulate a plausible, legitimate, nondiscriminatory reason for the adverse employment action"; and Plaintiff "proffers credible evidence sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment action." Doc. 26 at 4.   Plaintiff bolsters his position with the following evidence: (1) the EEOC Determination Letter reflecting the EEOC's conclusion that Defendant was in violation of the ADEA and that Plaintiff's supervisor "was instructed to terminate [Plaintiff] because of his age (67)"; (2) Redmond's affidavit stating that he was ordered by Massey to terminate Plaintiff because "the work could be done by a much younger woman for a lot less money and who was much better to look at"; (3) a statement that members of Defendant's management team made jokes about Plaintiff being an old man; and (4) an allegation that Defendant has a "history of age discrimination (Case of Bob Drinkard)." *Id.* at 5.

Defendant responds that Plaintiff is not entitled to summary judgment because he has failed to establish that he was terminated or discriminated against because of his age. Doc. 28 at 4.   Defendant argues that, while admissible at trial, Plaintiff's EEOC Determination Letter, should be considered "suitable for framing" Plaintiff's claim, but

that it does not create an issue of fact in this case. *Id*. at 7. Further, Defendant asserts that Redmond's affidavit should be "disregarded and stricken as a sham affidavit" because it contains statements that contradict testimony he provided in his deposition, including testimony that Defendant's managers made jokes about Plaintiff's age.[7] *Id*. at 8-12. Finally, Defendant argues that Plaintiff's conclusory statement that Defendant "has a history of age discrimination" is wholly unsupported by the record, and, thus, is meritless.[8] *Id*. at 12-13.

Defendant's motion for summary judgment argues it is entitled to summary judgment because Plaintiff cannot establish that his age was the but-for cause of his termination through either direct or circumstantial evidence. Doc. 24 at 7-22. The essence of Defendant's argument is that the facts, taken in the light most favorable to Plaintiff, show, at most, that Defendant had a "mixed motive" in terminating Plaintiff. *Id*. at 7-8. Defendant asserts that such a mixed-motive termination is not permissible under the ADEA. *Id*. at 7-22. Further, Defendant argues that Plaintiff's AADEA claim is due to be dismissed as duplicative. *Id*. at 22-23.

---

[7] As determined above, in Section II, the undersigned finds that Redmond's affidavit should not be disregarded as a sham. Therefore, the affidavit will be considered for purposes of summary judgment.

[8] The undersigned agrees with Defendant. Plaintiff's statement is entirely unsupported by the record. Plaintiff does not cite to any evidence that indicates Defendant has a pattern of age discrimination. As set forth in this court's Uniform Scheduling Order, "the discussion of evidence in the brief must be accompanied by a specific reference, by page and line, to where the evidence can be found in a supporting deposition or document. Failure to make such specific reference may result in the evidence not being considered by the court." Doc. 17. Accordingly, as Plaintiff has provided no citation to the evidence in the record to support his claim of Defendant's history of discrimination, and the undersigned cannot locate such evidence through independent review of the record, the undersigned will not consider Plaintiff's allegation as evidence for the purpose of summary judgment.

Plaintiff opposes, stating that there is a genuine issue of material fact as to the reason Plaintiff was terminated. Doc. 29 at 1. Pointing to the EEOC Determination Letter, Redmond's testimony and affidavit, and other circumstantial evidence, Plaintiff asserts that "the direct evidence and the circumstantial evidence supports that but for [Plaintiff's] age, he would not have been terminated." *Id*. at 3.

### D. Plaintiff's ADEA Claim

The ADEA prohibits an employer from discharging, or otherwise discriminating against, an employee because of his age if he is at least forty years old. 29 U.S.C. § 623(a)(1). A claim of unlawful age discrimination under the ADEA may be established through direct or circumstantial evidence. *See Van Voorhis v. Hillsborough Cty. Bd. of Cty. Comm'rs,* 512 F.3d 1296, 1300 (11th Cir. 2008).

The Eleventh Circuit Court of Appeals has defined "direct evidence of discrimination as evidence that reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" *Id.* (citing *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1086 (11th Cir. 2004) (quoting *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1358 (11th Cir. 1999))) (internal quotation marks omitted). It consists of evidence that, if believed, would prove the existence of a fact without inference. *Castle v. Sangamo Weston, Inc.,* 837 F.2d 1550, 1558 (11th Cir. 1988); *see also Standifer v. Sonic-Williams Motors, LLC,* 401 F. Supp. 2d 1205, 1215 (N.D. Ala. 2005) (quoting *Burns v. Gadsden State Cmty. Coll.,* 908 F.2d 1512, 1518

(11th Cir. 1990)).  "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age [ ] constitute direct evidence."  *Carter v. City of Miami,* 870 F.2d 578, 582 (11th Cir. 1989); *see also Rojas v. Florida,* 285 F.3d 1339, 1342 n. 2 (11th Cir. 2002).  Thus, "direct evidence does not include 'stray remarks in the workplace' or 'statements by nondecisionmakers' or 'statements by decisionmakers unrelated to the decisional process itself.'"  *Standifer,* 401 F. Supp. 2d at 1215 (quoting *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)).

Alternatively, a plaintiff may prove age discrimination by presenting circumstantial evidence regarding discrimination.  Evidence that suggests, but does not prove, a discriminatory motive is circumstantial by definition.  *Burrell v. Bd. of Trustees of Ga. Military Coll.*, 125 F.3d 1390, 1393-94 (11th Cir. 1997).  When an ADEA claim is based upon circumstantial evidence, courts analyze the allocation of burdens and the presentation of proof under the framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).[9]  *See Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th

---

[9]     In *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), the United States Supreme Court held that the language "because of" in the ADEA statute means that a plaintiff must prove that discrimination was the but-for cause of the adverse employment action.  *Gross,* 557 U.S. at 176. ("To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."); *see also id.* (explaining that the claim "cannot succeed unless the employee's protected trait actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome").  Prior to *Gross,* courts consistently evaluated ADEA claims based on circumstantial evidence of discrimination under the burden-shifting framework in *McDonnell Douglas*.  *See, e.g., Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000).  Following *Gross,* courts have continued to evaluate ADEA claims based on circumstantial evidence under the *McDonnell Douglas* framework.  *See Kragor v. Takeda Pharm., Am., Inc.,* 702 F.3d 1304, 1308 (11th Cir. 2012).

Notably, *Gross* held that it is improper to shift the burden of persuasion to the defendant in an age-discrimination case.  *Id.* at 173 ("[W]e must first determine whether the burden of persuasion ever

19

Cir. 2000) (applying *McDonnell Douglas* to evaluate ADEA claims); *Mauter v. Hardy Corp.,* 825 F.2d 1554, 1556 (11th Cir. 1987) (same).

Under *McDonnell Douglas,* a plaintiff must first establish a prima facie case of discrimination, which "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254 (1981). To establish a prima facie case of age discrimination, a plaintiff must show four things: "(1) that [he] was a member of the protected group of persons between the ages of forty and seventy; (2) that [he] was subject to adverse employment action; (3) that a substantially younger person filled the position that [he] sought or from which [he] was discharged; and (4) that [he] was qualified to do the job for which [he] was rejected." *Damon,* 196 F.3d at 1359.

Once the plaintiff establishes a prima facie case of age discrimination, the burden shifts to the employer to rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *See McDonnell Douglas,* 411 U.S. at 802–03. "This burden is one of production, not

___

shifts to the party defending an alleged mixed-motives discrimination claim brought under the ADEA. We hold that it does not."). But the *McDonnell Douglas* framework does not shift the burden of persuasion to the defendant; instead, once the employee establishes a prima facie case of discrimination, the burden of production is shifted to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See Tex. Dep't of Comm. Aff. v. Burdine*, 450 U.S. 248, 254-55 (1981). If the employer offers a legitimate, non-discriminatory reason, the employee is afforded an opportunity to show that the employer's stated reason is a pretext for discrimination. *See id*. at 256. Importantly, throughout this entire process, the ultimate burden of persuasion remains on the employee. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993) ("It is important to note, however, that although the *McDonnell Douglas* presumption shifts the burden of production to the defendant, [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated . . . remains at all times with the plaintiff." (internal quotations omitted)).

persuasion . . . ." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000). Thus, "[t]o satisfy that burden of production, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997) (quoting *Burdine,* 450 U.S. at 254–55).

If the employer produces evidence of a legitimate, nondiscriminatory reason for the adverse action, the plaintiff is afforded an opportunity to show that the employer's stated reason is a pretext for discrimination. *See, e.g., Reeves,* 530 U.S. at 143; *McDonnell Douglas,* 411 U.S. at 804. The plaintiff can show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256. "In other words, the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs,* 106 F.3d at 1528. If a plaintiff produces sufficient evidence that the employer's proffered reason is merely pretextual, that evidence may sometimes be enough to preclude summary judgment in favor of the employer. *See Reeves,* 530 U.S. at 148; *see also St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993) ("The

factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.").

Ultimately, a plaintiff must show that the discriminatory reason was the but-for cause of the adverse employment action. *Godwin v. WellStar Health Sys., Inc*., 615 F. App'x 518, 527 (11th Cir. 2015) (citing *Gross*, 557 U.S. at 177); *see also Mora v. Jackson Mem'l Found., Inc.,* 597 F.3d 1201, 1204 (11th Cir. 2010) ("[A]n ADEA plaintiff must establish 'but[-]for' causality . . . the employer either acted 'because of' the plaintiff's age or it did not[.]").   In *Gross,* the United States Supreme Court held that, in the context of the ADEA, age must be the reason that the employer decided to act." *Norris v. City of Millbrook,* No. 2:11-cv-051-MEF, 2011 WL 5553082, at *7 (M.D. Ala. Nov. 15, 2011) (internal quotation marks and citations omitted).   "In other words, the causation standard outlined in *Gross* . . . requires a plaintiff to prove that a challenged employment decision would not have occurred but for the defendant's consideration of [his age]." *Archie v. Home–Towne Suites, LLC,* 749 F. Supp. 2d 1308, 1315 (M.D. Ala. 2010).   Importantly, it is not necessary to prove that age was the *sole* motivating factor in an adverse employment action, but, instead, was the but-for reason. *McQueen v. Wells Fargo Home Mortg.,* 955 F. Supp. 2d 1256, 1283 (N.D. Ala. 2013) ("[T]he defendant cites no authority for the proposition that the plaintiff cannot allege that race and age both caused the discrimination at issue.   Nor does this court hold that the

Supreme Court's decision in *Gross* should be read so restrictively."); *Archie*, 749 F. Supp. 2d at 1315 n.4 ("*[G]ross* requires 'but for' causation.   It has long been the law that there is a difference between 'but for' causation and 'sole' causation.")

### i.    Direct Evidence[10]

As noted above, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age [ ] constitute direct evidence." *Carter,* 870 F.2d at 582.   Evidence that suggests discrimination, or is open to more than one interpretation, does not constitute direct evidence.   *Merritt v. Dillard Paper Co*., 120 F.3d 1181, 1189 (11th Cir. 1997).   Here, the only evidence that could be construed as direct is the testimony that Massey, the decisionmaker as to Plaintiff's termination, told Redmond to dismiss Plaintiff because the work could be done by a "much younger woman," "for less money," and who was "much better to look at."   This evidence is reflected in two sources: (1) Redmond's affidavit, and (2) Redmond's deposition testimony.

Redmond's affidavit states, in its entire, pertinent part:

Without cause, I was instructed to terminate [Plaintiff] in May of 2012 by James Massey.   When I asked what was the reason for terminating him, I was told that the work could be done by a much younger woman for a lot

---

[10] Plaintiff's Motion for Summary Judgment does not assert that Plaintiff offers direct evidence in support of his ADEA and AADEA claim.   However, it does contain a paragraph addressing the *McDonnell Douglas* analysis.   Thus, it appears that Plaintiff is relying primarily upon circumstantial evidence to prove that he was discriminated against because of his age.   *See generally* Doc. 26.   However, in Plaintiff's response in opposition to Defendant's motion for summary judgment, Plaintiff states that "both the direct evidence and the circumstantial evidence supports that but[-]for [Plaintiff's] age, he would not have been terminated."   Doc. 29 at 3, ¶ 9.   Thus, to the extent that Plaintiff may be relying upon direct evidence of discrimination to prove his case, the undersigned will analyze the evidence which could be construed as direct, and whether that evidence is sufficient to survive summary judgment.

less money and who was much better to look at.

Doc. 26 at 9.   Redmond's deposition testimony reads, in its entire, pertinent part:

> . . . James Massey called me on the phone on a Wednesday . . . . And he called me on the phone from, his office over in another building over to my office in the big building and told me that he — that he wanted me to dismiss [Plaintiff], that he — that they had gotten into it with — with somebody from the bank about something . . . .   and he told me, you know, he felt like he was too old and we were paying him too much money anyway . . . .

Doc. 25-2, 24:15-25:5.

To the extent Plaintiff is arguing that these statements, construed in the light most favorable to Plaintiff, constitute direct evidence of age discrimination, the undersigned disagrees.   The statements by Massey, if believed, do not prove that he terminated Plaintiff, without inference or presumption, due to his age.   Redmond's affidavit version of Massey's statement seems to indicate without inference, if anything, that Massey intended to hire an attractive female to replace Plaintiff, whom he could pay less.   The fact that Plaintiff's replacement is significantly younger than Plaintiff seems to be secondary to the fact that she is a woman who is "better to look at" than Plaintiff.

Redmond's deposition version of Massey's statement comes closer to being considered direct evidence of discrimination.   However, when taken in context with the remainder of Redmond's testimony, Plaintiff's age again plays second fiddle to the argument between Plaintiff and Chance.   This interpretation is supported by Massey's use of the word "anyway."   Indeed, according to Redmond, Massey cited the argument

with Chance as the basis for Plaintiff's termination, supplementing such basis with the fact that Plaintiff was "too old" and was making "too much money" *anyway*. Such qualification prevents the statement from proving, without inference, that Plaintiff's age was the reason for his termination. Thus, the statement is not the type of blatant remark that constitutes direct evidence. This conclusion is supported by comparison to cases within the Eleventh Circuit that determined evidence of discrimination was direct. *See Van Voorhis,* 512 F.3d at 1300 (holding that a statement that the defendant "didn't want to hire any old pilots" constitutes direct evidence); *Earley v. Champion Intern. Corp.,* 907 F.2d 1077, 1082 (11th Cir. 1990) (concluding that "Fire Early—he is too old" would constitute direct evidence); *Burns*, 908 F.2d at 1518 (holding that statement that "no woman would be named to a B scheduled job" constitutes direct evidence); *Sennello v. Reserve Life Ins. Co*., 872 F.2d 393, 394 (11th Cir. 1989) (holding that statement that "we can't have women in management" constitutes direct evidence); *Castle v. Sangamo Weston, Inc*., 837 F.2d 1550, 1558 n.13 (11th Cir. 1988) (noting that an example of direct evidence would be "a scrap of paper saying, 'Fire Rollins—she is too old'"); *Lindsey v. Am. Cast Iron Pipe Co*., 772 F.2d 799, 801-02 (11th Cir. 1985) (holding that statements such as "when the position open[s] up, the company [will] be looking for a younger person than Lindsey to fill it" constitute direct evidence); *Capizzi v. Rheem Mfg. Co.,* Case No. 2:15-cv-276-PWG, 2016 WL 4238641, at *9 (M.D. Ala. Aug. 9, 2016) (holding that a plan to terminate older employees along with statement that the plaintiff

was on the list of older employees whose employment was to be terminated constitutes direct evidence); *Newsome v. KwangSung Am. Corp.*, 798 F. Supp. 2d 1291, 1297-98 (M.D. Ala. 2011) (statements that the plaintiff would be replaced by a "younger Korean" constitutes direct evidence).

Accordingly, because the undersigned concludes that Plaintiff has not provided the court with direct evidence to prove that he was discriminated against based upon his age, the undersigned proceeds to examine whether Plaintiff's circumstantial evidence, if any, is sufficient to survive Defendant's motion for summary judgment.

### ii.     Circumstantial Evidence

As discussed more fully above, a plaintiff may proceed to establish a claim of age discrimination through circumstantial evidence if direct evidence is lacking.  Proving a case through circumstantial evidence implicates the *McDonnell Douglas* burden-shifting framework—*i.e.*, Plaintiff must prove a prima facie case of discrimination, which shifts the burden to Defendant to proffer a non-discriminatory reason for the termination, requiring Plaintiff to then rebut Defendant's said reason as pretext. [11]

Here, Plaintiff has presented a prima facie case of age discrimination.  Plaintiff has shown that (1) he is a member of a protected class of persons between ages forty and seventy (Plaintiff was approximately sixty-three years old at the time he was terminated);

---

[11] Notably, while the use of the *McDonnell Douglas* framework is applicable to ADEA cases, it is not the *sine qua non* for a plaintiff to survive summary judgment in a discrimination case.  *See Smith v. Lockheed-Martin, Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).  Instead, "the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent."  *Id.*  A triable issue of fact exists, "if the record, viewed in a light

(2) he was subjected to an adverse employment action (Plaintiff was fired); (3) a substantially younger person filled the position from which he was discharged (Plaintiff was replaced by a thirty-eight year-old female); and (4) he was qualified to do the job from which he was terminated (Plaintiff's evidence shows that he was a competent employee in the financial area he was assigned).[12]  *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998).

Defendant has proffered, under its burden of production, a legitimate, non-discriminatory reason for its employment decision—that Plaintiff was terminated because of the confrontation that ensued between Plaintiff and Chance, the representative from Ally Finance.  Accordingly, Plaintiff must now show that Defendant's proffered reason was merely pretext, and that the real reason for his termination was his age.

Plaintiff disputes that a confrontation occurred between he and Chance during the meeting with Massey.  While Plaintiff admits that he was called into Massey's office to speak with Chance, he denies calling Chance a "fucking liar," and denies that his voice was ever "elevated" during the conversation.  Doc. 25-3 25:9-11; 29:8-21; 31:5-33:1.  If Plaintiff's version of events are to be believed, Defendant's proffered reason for terminating Plaintiff could not be the real reason for Plaintiff's termination, and instead,

---

most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker."  *Id.*

[12] Notably, Defendant's argument within its motion for summary judgment does not rely upon Plaintiff's inability to establish a prima facie case.  While Defendant does not concede that Plaintiff has established a prima facie case, Defendant focuses upon its argument that Plaintiff cannot prove that discrimination was the but-for cause of Plaintiff's termination.  Doc. 24 at 15 ("In this case, even if the Plaintiff is able to establish a prima facie case . . . [Defendant] can demonstrate a non-pretextual reason for its employment decisions related to the Plaintiff, which the Plaintiff cannot prove was false or that

would be merely pretextual. Such a dispute of material fact creates a genuine issue as to whether Defendant intentionally discriminated against Plaintiff based upon his age. *Newsome,* 798 F. Supp. 2d at 1297 (citing *Dixon v. The Hallmark Cos., Inc*., 627 F.3d 849, 855 (11th Cir. 2010)).

Regardless of the factual dispute between the parties as to whether Defendant's reason was pretextual, Defendant argues that Plaintiff, nonetheless, cannot satisfy the but-for standard in *Gross* because he cites multiple reasons why he believes he was terminated—*i.e.,* that he was making too much money, that he refused to participate in certain "discrepancies" at the dealership, and that he was too old. Initially, the undersigned would note that the inquiry into pretext centers on the employer's beliefs, not the employee's beliefs. *Alvarez v. Royal Atl. Dev., Inc*., 610 F.3d 1253, 1266 (11th Cir. 2010). Thus, Plaintiff's beliefs as to the reasons for his termination are largely irrelevant.

But, further, Defendant confuses a "but-for" reason with a "sole" reason for Plaintiff's termination. After *Gross,* "[t]here [was] some argument among the courts about whether the necessary implication of *Gross* is that a plaintiff cannot simultaneously pursue claims under the ADEA and [some other anti-discrimination statute] regarding the same employment decision and must elect between the two theories." *Moore v. Jefferson Cty. Bd. of Educ*., Case No. 10-3272, 2012 WL 3030109, at *7 n.3 (N.D. Ala. June 11, 2012). However, the Eleventh Circuit ultimately determined that, because

discrimination was the real reason.").

Federal Rule of Civil Procedure 8(d) "expressly permits the pleading of alternative and inconsistent claims[,]" plaintiffs are permitted to pursue ADEA claims in combination with other claims for unlawful discrimination. *Savage v. Secure First Credit Union*, No. 15-12704, 2016 WL 2997171, at *1 (11th Cir. May 25, 2016).

Prior to the Eleventh Circuit's explicit holding, this court concluded on several occasions that *Gross* did not prohibit a plaintiff from pursuing claims under Title VII and the ADEA. The reasoning from those cases is helpful, here, where Defendant argues that Plaintiff's ADEA claim cannot survive summary judgment because there are multiple possible reasons, outside of Defendant's proffered reason, for Plaintiff's termination.

In *Freeman v. Koch Foods of Ala.*, No. 2:09-CV-270-MEF, 2010 WL 9461668 (M.D. Ala. June 15, 2010), this court reasoned that but-for causation did not equate to sole causation:

> A sole-causation standard (which requires a plaintiff to prove that the defendant's consideration of a protected category is the only cause of a challenged employment decision) is not the same as a but-for, or necessary, causation standard (which requires a plaintiff to prove that a challenged employment decision would not have occurred but for the defendant's consideration of a protected category). *See McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 282 n. 10, 96 S. Ct. 2574, 49 L.Ed.2d 493 (1976) (distinguishing sole causation from but-for causation); Michael C. Harper, *The Causation Standard in Federal Employment Law: Gross v. FBL Financial Services, Inc., and the Unfulfilled Promise of the Civil Rights Act of 1991,* 58 Buff. L. Rev. 69, 75 (2010) (explaining the difference between various types of employment-discrimination causation standards). *Even though a sole cause is also a necessary cause, a necessary cause need not be a sole cause.* Rather, a particular result may have two or more necessary causes, and the majority opinion in *Gross* does

not hold otherwise. Thus, logic dictates that [the plaintiff] need not be required to choose between her three theories of discrimination and retaliation.

*Freeman,* 2010 WL 9461668, at *2 (emphasis and alteration supplied).

Similarly, in *Archie v. Home-Towne Suites, LLC,* 749 F. Supp. 2d 1308 (M.D. Ala. 2010), this court rejected the argument that a plaintiff could not proceed with both an age and a gender discrimination claim.

The court recognizes that there are courts which have interpreted *Gross* to require an election of remedies by plaintiffs. *See, e.g., Culver v. Birmingham Bd. of Educ.,* 646 F. Supp. 2d 1270 (N.D. Ala. 2009) (Acker, J.). Other courts have declined to so. *See, e.g., DeAngelo v. Dentalez, Inc.,* No. 09–535, 738 F. Supp. 2d 572, 2010 U.S. Dist. LEXIS 91378, 2010 WL 3488609 at *5 (E.D. Pa. Sep.2, 2010) (collecting cases).

As stated above, *Gross* requires 'but for' causation. It has long been the law that *there is a difference between* 'but for' *causation and* 'sole' *causation. See McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976) (distinguishing sole causation from but for causation); *see also McNely v. Ocala Star–Banner Corp.,* 99 F.3d 1068, 1076 (11th Cir.1996) (same). *Gross* refers only to 'but for' causation. *Gross,* 129 S.Ct. at 2350.

It appears to the court, therefore, that even after *Gross,* a plaintiff might prove that gender discrimination was a substantial or motivating factor in an adverse employment action, satisfying the standard for the Title VII claim, but also show that if it had not been for her age, she would not have been terminated, satisfying the ADEA standard, so that no election of remedies is required.

*Archie,* 749 F. Supp. 2d at 1315 (emphasis supplied).

Here, Plaintiff has only asserted an ADEA claim. But, based upon its interpretation of *Gross's* but-for causation requirement, Defendant argues that the

multiple reasons cited by Plaintiff and Plaintiff's own witness amount to a mixed-motive case that is impermissible under *Gross*. In other words, Defendant argues that, because the evidence shows that there could be multiple reasons for Plaintiff's termination that are not based upon his age, Plaintiff has presented a mixed-motives case and is unable to show that his age was the but-for reason of his termination. Therefore, Defendant asserts that Plaintiff's ADEA claim cannot survive summary judgment. The undersigned disagrees with Defendant's reasoning because "[r]equiring proof that a prohibited consideration was the 'but-for' cause of an adverse job action does not equate to a burden to show that such consideration was the 'sole' cause." *See Bailey v. City of Huntsville, Ala.*, No. 5:11-cv-0156-PWG, 2012 WL 2047672, at *9 (N.D. Ala. May 25, 2012).

Plaintiff's evidence shows that Redmond told Massey to fire Plaintiff because of the confrontation with Chance, because he was "too old and making too much money anyway," *and* because he could be replaced by a younger woman who was better to look at. From this evidence, a reasonable juror *could* conclude that the determining factor for Massey in electing to terminate Plaintiff was Plaintiff's age. The jury could also conclude that money was the but-for cause of Plaintiff's termination, or Plaintiff's gender, or his looks. However, just because the evidence shows multiple possible reasons for Plaintiff's termination does not preclude a jury from determining that age was the but-for cause. With this reasoning applied to Plaintiff's evidence, the undersigned

concludes that Plaintiff has presented enough circumstantial evidence to support a reasonable inference that his age was the but-for cause of his termination, as required by *Gross*. *See Mora,* 597 F.3d at 1204 (holding that statement "I need someone younger I can pay less" is at least circumstantial evidence sufficient to survive summary judgment); *Damon*, 196 F. 3d at 1362 (concluding that an employer's statement that he wanted "aggressive, young men" like himself to be promoted was circumstantial evidence of discrimination); *Beaver v. Rayonier, Inc.*, 200 F.3d 723, 731-32 (11th Cir. 1999) (in combination with other evidence, the statement that the decisionmaker wanted to attract "younger, engineer-type employees or supervisors" was enough circumstantial evidence to survive summary judgment); *Alphin v. Sears, Roebuck & Co.*, 940 F.2d 1497, 1500-01 (11th Cir. 1991) (statements that "both of us are too old and making too much money" constitutes circumstantial evidence to establish a prima facie showing of age discrmination); *Bonham v. Regions Mortg.*, 129 F. Supp. 2d 1315, 1325 (M.D. Ala. 2001) (concluding that decisionmaker's comments that the plaintiff was "getting real old" established a prima facie case of discrimination that, in combination with the plaintiff's evidence to show that the defendant's reasons for termination may be pretextual, warranted reversal of summary judgment in the defendant's favor). Accordingly, Plaintiff should be allowed to submit his ADEA claim to the jury.

In summary, the undersigned concludes that Plaintiff has established a prima facie case of age discrimination. Defendant, in turn, has proffered a legitimate,

non-discriminatory reason for Plaintiff's termination—*i.e.*, that a confrontation occurred between Plaintiff and Chance in which Plaintiff called Chance a "fucking liar." Plaintiff has presented his own testimony, which disputes that such a confrontation ever occurred, to support the conclusion that the proffered reason is simply pretext. Plaintiff has also submitted evidence that Massey stated that Plaintiff's termination was due, in part, to his age. Thus, because the evidence (construed in the light most favorable to Plaintiff) challenges whether Defendant's proffered reason for termination even occurred and points to an age-related motive for Plaintiff's termination, Defendant's motion for summary judgment is due to be denied. Notably, however, this evidence is not sufficient to grant Plaintiff's motion for summary judgment. Plaintiff has merely created a dispute as to Defendant's proffered reason, and has not shown that the reason is indeed pretext and that his age was the but-for cause of his termination. Thus, Plaintiff's motion for summary judgment is also due to be denied.

Therefore, the undersigned recommends that Defendant's motion for summary judgment as to Plaintiff's ADEA claim be denied, and that Plaintiff's motion for summary judgment be denied.

### E.    Plaintiff's AADEA Claim

Defendant also asks the court to grant summary judgment as to Plaintiff's AADEA claim as it is duplicative with Plaintiff's ADEA claim. Doc. 24 at 22-23. Defendant cites cases from the Northern District of Alabama, which are not binding upon

this court, to support its conclusion. It fails to cite cases from this district, which conclude to the contrary.

In *Wallace v. Jim Walter Homes, Inc.,* 68 F. Supp. 2d 1303 (M.D. Ala. 1999), United States District Judge Myron H. Thompson addressed the defendant's motion to dismiss the plaintiff's AADEA claim. In that case, the defendant argued that the plaintiff's AADEA claim should be dismissed because the AADEA statute forces claimants to elect between state and federal causes of action. *Wallace*, 68 F. Supp. 2d at 1303. Judge Thompson concluded that the defendant's motion was "premised on a faulty reading of the statutes." *Id.* He reasoned:

> 'The starting point for all statutory interpretation is the language of the statute itself.' *United States v. DBB, Inc.,* 180 F.3d 1277, 1281 (11th Cir.1999). Courts should 'assume that [the legislature] used the words in a statute as they are commonly and ordinarily understood, and [should] read the statute to give full effect to each of its provisions.' *Id.* The Alabama statute disputed here does indeed mandate that 'if an action is brought in the federal court, any action pending in the state court shall be simultaneously dismissed with prejudice.' 1975 Ala. Code § 25–1–29. Jim Walter apparently reads the statute broadly to make simultaneous pursuit of federal and state claims in the same court impossible, but the language of the statute is not that broad and instead specifically limits its scope to mandate dismissal of 'any action pending *in the state court*' if any equivalent action is pursued '*in the federal court.*' *Id.* (emphasis added). By specifically mentioning the courts themselves, the statute expresses an intent to avoid redundant adjudications of the same dispute in two separate fora. The dismissal provision thus operates to conserve the judicial resources of Alabama state courts, not to make claims unavailable for simultaneous pursuit in a single forum.

*Id.*

In a 2016 case before the Middle District of Alabama, United States Magistrate

Judge Paul W. Greene cited Judge Thompson's holding in *Wallace* and similarly concluded that the defendant's motion for summary judgment as to the plaintiff's AADEA claim should be denied. *Capizzi,* 2016 WL 4238641, at *4. Judge Green similarly reasoned that the defendant "offer[ed] no binding authority that as a matter of law the ADEA precludes rather than supercedes [sic] simultaneous consideration of claims under the AADEA." *Id.*

The undersigned does not dispute Judge Thompson's or Judge Greene's statutory interpretation of the AADEA. Accordingly, the undersigned recommends that Defendant's motion for summary judgment as to Plaintiff's AADEA claim, based on the argument that such claim is duplicative, be denied.

IV. CONCLUSION

In conclusion, it is

ORDERED that Defendant's Motion to Strike (Doc. 30) is DENIED. It is further

ORDERED that Defendant's Motion to Strike the Affidavit of Joseph Redmond, contained within Defendant's Response to Plaintiff's Motion for Summary Judgment, is DENIED. Further, for all of the reasons stated herein, the undersigned Magistrate Judge hereby

RECOMMENDS that Defendant's Motion for Summary Judgment (Doc. 23) be DENIED and that Plaintiff's Motion for Summary Judgment (Doc. 26) be DENIED. It is

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **May 29, 2017**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 15th day of May, 2017.

/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE